F I L E D
United States Court of Appeals
Tenth Circuit

APR 5 2000

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MICHAEL J. HOGAN,

      Defendant-Appellant.

No. 99-3342
(District of Kansas)
(D.C. No. 98-CR-10001)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **KELLY,** and **MURPHY**, Circuit Judges.

## I. INTRODUCTION

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Michael Hogan pleaded guilty[1] to two counts of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841, one count of attempted possession of cocaine with intent to distribute in violation of 21 U.S.C. § 846, and three counts of possession of a firearm by an unlawful user of controlled substances in violation of 18 U.S.C. § 922(g)(3). The district court sentenced Hogan to a term of imprisonment of seventy-eight months on each count, providing that all of the terms of imprisonment would run concurrently. On appeal, Hogan asserts that the district court erred in refusing to suppress three weapons found during a warrant-based search of his residence. He further asserts that the district court erred in calculating the amount of drugs attributable to him for purposes of the United States Sentencing Guidelines. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

## II. BACKGROUND

In late 1997, agents of the Drug Enforcement Administration ("DEA") began investigating Hogan after a confidential informant provided the DEA with information that Hogan was involved in drug trafficking. On January 8, 1998, Hogan agreed to sell a kilogram of cocaine to the confidential informant and a

---

[1]Hogan entered his guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), preserving his right to appeal the district court's denial of his motion to suppress.

DEA agent. During the negotiations, Hogan informed the confidential informant that he had approximately four ounces of cocaine at his house and that he could come up with enough cocaine from other sources to complete the deal. At ten o'clock that evening, however, the drug deal escalated into a shooting incident between other defendants and agents of the DEA. Hogan and others were arrested.

Early the next morning, DEA agents applied for a warrant to search the home of Hogan's parents. Hogan had been living with his parents for several months. A magistrate judge issued the requested warrant, authorizing officers to search for, *inter alia*, cocaine; firearms "held in connection with the sale or distribution of cocaine"; and financial documents such as bank documents, customer lists, and telephone/pager bills associated with the distribution of cocaine. During a three-hour search of Hogan's room, officers found a package of cocaine secreted between Hogan's mattress and box springs. The officers also found three handguns and a homemade silencer in a locked briefcase stowed under Hogan's bed.

Prior to trial, Hogan filed a motion to suppress the weapons and silencer found in the briefcase during the search of his room. As grounds for his suppression motion, Hogan argued as follows: (1) the search of the briefcase was improper because the briefcase was not identified as a proper place to be searched

in the search warrant; (2) although the warrant specifically empowered officers to search for weapons, the affidavit in support of the warrant was absolutely silent on the question of weapons; and (3) once the officers found the quantity of cocaine identified in the affidavit in support of the warrant, they were obligated to halt their search. The district court rejected these contentions, concluding that the briefcase reasonably could have contained any of the items identified in the warrant. Thus, according to the district court, the search of the briefcase was both reasonable and within the terms of the warrant.

After the district court denied his motion to suppress, Hogan entered into a conditional guilty plea agreement with the government. In that agreement, the parties specifically agreed that Hogan had attempted to possess with intent to distribute eighteen ounces of cocaine. At sentencing, the district court calculated Hogan's offense level based on the quantity set forth in the plea agreement.

### III. ANALYSIS

1. MOTION TO SUPPRESS

In reviewing the denial of a motion to suppress, this court applies the clearly erroneous standard to the district court's factual findings and views the evidence in the light most favorable to the government. *See United States v. Eylicio-Montoya*, 18 F.3d 845, 849 (10th Cir. 1994). The ultimate conclusion that

a search is reasonable is, however, a question of law subject to *de novo* review. *See id.*

On appeal, Hogan makes the following two closely related arguments: (1) the officers were obligated to terminate the search immediately upon the finding of the cocaine described in the affidavit in support of the search warrant; and (2) the officers could not search the briefcase where the guns were found because it was not specifically identified in the warrant as a place to be searched. These contentions can be resolved in short order. Hogan's assertion that officers could not open the briefcase found under his bed without a separate warrant is at odds with both basic treatise law and Tenth Circuit precedent.

> If a warrant sufficiently describes the premises to be searched, this will justify a search of those personal effects found therein and belonging to the person occupying the premises if those effects might contain the described items. It is not necessary, in order to comply with the Fourth Amendment requirement that the place to be searched be described with particularity, that the warrant also describe such receptacles. For example, if officers executing a warrant for marijuana find in the described house a matchbox and wallet, these items may be searched because they are "plausible repositories" for the marijuana.

Wayne R. LaFave, Search and Seizure, § 4.10(b) (3d ed. 1996); *see also United States v. Gentry*, 642 F.2d 385, 387 (10th Cir. 1981) (holding that warrant for search of premises authorized search for briefcase found therein). Because it is clear that any number of the items set forth in the warrant could have been found in the briefcase, the search of that briefcase was consistent with the warrant.

Hogan's claim that officers had to stop searching once they located the cocaine in his room is similarly flawed. The warrant also empowered the officers to search for drug paraphernalia and financial records relating to drug distribution, any which of those items could have been located in the briefcase.[2] Once the briefcase was validly opened, the guns contained therein were in plain view and subject to seizure.

The district court's conclusion that the search of the briefcase was reasonable and consistent with the dictates of the Fourth Amendment is clearly correct and is, therefore, affirmed.

## 2. DRUG CALCULATION

Hogan asserts that the district court miscalculated the amount of drugs attributable to him for purposes of calculating his base offense level under United States Sentencing Guideline § 2D1.1(c). In particular, Hogan asserts that the district court erred in holding him responsible for eighteen ounces of cocaine flowing from the interrupted transaction on the day of Hogan's arrest. This court

---

[2]Before the district court, Hogan asserted that those portions of the warrant allowing the officers to search his residence for weapons was invalid because there was nothing contained in the affidavit in support of the warrant regarding the likely presence of weapons. Hogan does not reassert that argument on appeal. Even assuming he had reasserted that claim and assuming the claim had any merit, the search of the briefcase was still proper because it was possible that the briefcase contained financial records, drug paraphernalia, or additional quantities of drugs.

reviews a district court's drug quantity calculations for clear error. *See United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996). The government has the burden of proving the quantity of drugs for sentencing by a preponderance of the evidence. *See id.*

Hogan's contentions regarding the district court's drug-quantity calculations are clearly without merit. The plea agreement specifically provided that Hogan had attempted to possess with intent to distribute eighteen ounces of cocaine. Furthermore, during the colloquy at the change of plea hearing, the district court engaged in a lengthy discussion with Hogan regarding the consequences of the plea agreement and the fact that Hogan had specifically agreed he had negotiated to sell eighteen ounces of cocaine. Finally, when the question of drug quantity arose at the sentencing hearing, the district court offered Hogan the chance to withdraw his plea, an offer Hogan declined.

The district court did not, however, rely exclusively on the stipulation in the plea agreement in determining that Hogan was responsible for the eighteen ounces alleged in count two of the superseding indictment. The district court also heard the testimony of DEA agent Nikki Hollmann. Hollmann specifically testified that Hogan agreed to sell her one kilogram of cocaine for $15,000.[3] At

---

[3]As specifically noted by the district court, one kilogram is not exactly equal to eighteen ounces. Nevertheless, as further noted by the district court, those two amounts are roughly equivalent and the slight difference between the

the conclusion of the sentencing hearing, the district court specifically found Hollmann's testimony credible, implicitly rejecting Hogan's contrary testimony. *See United States v. Gama-Bastidas*, 142 F.3d 1233, 1239-40 (10th Cir. 1998) (holding that these kind of credibility determinations are particularly within the province of the district court).  So credited, Holland's testimony is more than sufficient to support the district court's drug calculations.

## IV.  CONCLUSION

For those reasons set forth above, the judgment of the United States District Court for the District of Kansas is hereby **AFFIRMED**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge

---

two was not relevant for purposes of establishing Hogan's offense level under the Sentencing Guidelines.